J-A21045-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| CHAD BATTERMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SILVIA SANTO | : | No. 470 EDA 2024 |

Appeal from the Order Entered January 12, 2024
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s):  PACSES: 267116855

BEFORE:  KUNSELMAN, J., NICHOLS, J., and BECK, J.

MEMORANDUM PER CURIAM:                           **FILED JANUARY 15, 2025**

Chad Batterman ("Batterman") appeals pro se from the order entered by the Philadelphia County Court of Common Pleas ("trial court") denying his petitions for contempt of child support orders filed against Silvia Santo ("Santo").  After careful review, we affirm.

Batterman and Santo were married on November 29, 2014, and separated three years later.  The parties have two children born of the marriage.  In December 2017, Santo filed a complaint for child support.  On June 22, 2018, the trial court entered a final child support order calculating Batterman's monthly child support obligation for the two children to be $686.00 per month.  On October 1, 2018, Batterman filed a petition to modify the support order.  Following protracted proceedings, the trial court entered an order on February 20, 2020, directing Batterman to pay $674.48 per month

in child support. In addition, the order specified that Batterman would provide healthcare coverage to the children. However, Santo was responsible for the first $250 of unreimbursed medical expenses per year. This Court affirmed that order. *See Santo-Batterman v. Batterman*, 1258 EDA 2020 (Pa. Super. Aug. 23, 2021) (non-precedential decision).

Relevant herein, on October 26, 2023, Batterman filed a "Petition for Contempt of Court of the Support Order," and thereafter filed a nearly identical amended contempt petition. Batterman alleged that Santo was in contempt of the support order because she enrolled the children in Pennsylvania's Children Health Insurance Program ("CHIP"), opened bank accounts for the children, and failed to make co-payments for the children's medical and dental bills. On November 8, 2023, the trial court entered an order directing Santo to respond to Batterman's petition for contempt within twenty days. Santo did not file a response. On December 20, 2023, Batterman filed an amended petition for contempt, raising substantially the same claims as he did in his October 26, 2023 petition, and adding a claim that Santo was in contempt for failing to follow the trial court's November 8, 2023 order.

On January 10, 2024, Batterman filed an "Emergency Motion for Recusal and/or disqualification of Judge Christopher Mallios." The trial court held a hearing on Batterman's contempt petition the next day, at which Batterman

and Santo testified.[1]  Batterman presented no evidence on his recusal motion.
Ultimately, the trial court found Santo to be credible and denied the contempt
petition.[2]  Batterman timely appealed.  On appeal, Batterman raises various
claims regarding the trial court's failure to find Santo in contempt, challenges
what he believes to be irregularities in the proceeding, and argues that the
trial court judge should have recused himself.  Batterman's Brief at 2-26.

## Failure to Find Santo in Contempt

As it relates to the trial court's failure to find Santo in contempt,
Batterman raises the following arguments.  First, Batterman contends that the
trial court erred as a matter of law in failing to find Santo in contempt.  *Id.* at
2.  Batterman argues that the support order obligates Santo to pay the first
$250 in unreimbursed medical expenses, but that she failed to do so when
she took the children to the dentist on August 30, 2023, and March 28, 2024.
*Id.* at 2-3; *see also id.* at 3, 5-6 (noting that Santo previously failed to pay
$100 to a dentist for a cavity filled for the parties' daughter, and the dental
practice ultimately opened a collection claim against their daughter).
Batterman asserts that Santo was responsible for presenting evidence at the

---

[1] At this same hearing, the trial court also heard evidence on Santo's petitions
for contempt against Batterman for failing to pay his child support obligations.
Ultimately, the trial court found Batterman in contempt.  Batterman appealed
this determination at 469 EDA 2024, which we address by separate
memorandum decision.

[2] The trial court did not rule on the recusal motion in this order.

- 3 -

contempt hearing to establish that she paid the unreimbursed medical expenses. *Id.* at 3. Batterman claims that Santo blamed her failure to provide evidence on his inability to make consistent child support payments, which, according to Batterman, was irrelevant to a finding of contempt. *Id.* at 4; *see also id.* at 5 (wherein Batterman rebuts Santo's testimony that he was responsible for the dental payments). Batterman further states that he paid $28,500 in child support payments between July and October 2023. *Id.* at 4. Batterman also argues that Santo's obligation to pay the medical expenses is based purely upon the parties' support order, and the only way to enforce nonpayment is through a contempt petition. *Id.* at 6-7. Batterman claims that the absence of evidence means the trial court should have compelled Santo to pay the dental fees and found Santo in contempt for defying the parties' support order. *Id.* at 3-4, 5-6, 8, 14; *see also id.* at 14 (noting there are no time limits on when the trial court can find a party in contempt).

Batterman next contends that Santo was in contempt of the support order because she hid the children's bank account information from him. *Id.* at 9-10, 17, 20, 22. He argues he may be entitled to have access to the funds in the accounts. *Id.* at 9.

Batterman additionally asserts that the trial court erred in finding that the support order does not obligate Santo to use Batterman's insurance, noting that the support order obligated him to provide healthcare coverage to the children. *Id.* at 10-11, 12, 22. Batterman argues that Santo enrolled the

children in CHIP behind his back, while he was still responsible for providing health insurance to the children. *Id.* at 11, 16, 17, 20. He notes that Santo continues to complain about support payments, but nonetheless allowed him to spend $800 per month on health insurance. *Id.* at 12. He contends that allowing Santo to use free state insurance without informing him is contradictory to support order and would allow one party to unilaterally decide which insurance to use. *Id.* at 13. Batterman further maintains that Santo refused to comply with the support order by declining to provide healthcare information to the children's daycare and leaving him off medical intake forms. *Id.* at 16-17.

Lastly, he argues that the trial court entered an order on November 8, 2023,[3] directing Santo to respond to Batterman's petitions, but Santo refused. *Id.* at 17-18. According to Batterman, the trial court's refusal to find Santo in contempt for this failure allows parties to "pick and choose" which orders must be followed. *Id.* at 18, 19. Batterman further asserts that the trial court found him in contempt for similar actions, but declined to find Santo in contempt. *Id.* at 8, 14-15, 19-21. He claims the trial court is not interested in the children's best interests based on its orders finding him to be in

---

[3] Batterman claims the trial court entered a similar order on November 23, 2023. Our review of the docket, however, shows no such order entered on that date.

- 5 -

contempt but refusing to find Santo in contempt for the same behaviors. *Id.* at 20.

"When considering an appeal from an [o]rder holding a party in contempt for failure to comply with a court [o]rder, our scope of review is narrow: we will reverse only upon a showing the court abused its discretion." *Harcar v. Harcar*, 982 A.2d 1230, 1234 (Pa. Super. 2009) (citation omitted). "Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from failing into disrepute." *Habjan v. Habjan*, 73 A.3d 630, 637 (Pa. Super. 2013) (citation omitted); *see also* Pa.R.Civ.P. 1910.25. The general rule in proceedings for civil contempt is that "the burden of proof rests with the complaining party to demonstrate, by a preponderance of the evidence, that the defendant is in noncompliance with a court order." *Habjan*, 73 A.3d at 637 (citation omitted).

> To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

*Id.* (citation omitted).

Here, the trial court addressed Batterman's contempt claims as follows:

> [I]t is true that [Santo] did not respond to [Batterman's] pleadings as she was directed to do in th[e trial c]ourt's November 8, 2023 order[;] there is no reason for that failure to lead to a finding of contempt of support. While it would have been helpful to the [trial c]ourt to have access to [Santo's] written response

before the hearing, her failure to respond did not constitute contempt …. Accordingly, no relief is due.

Likewise, all of [Batterman's] other contempt allegations against [Santo] reference actions that are not governed by the child support order and therefore could not be a reason to hold [Santo] in contempt of the support order. Specifically, [Batterman], not [Santo] is the obligor in the child support case and the child support order does not obligate [Santo] to use [Batterman's] health insurance. Moreover, the support order is silent as to whether a party can keep bank accounts for the children.

In addition, [Batterman failed to] prove that [Santo] did not pay her share of unreimbursed medical expenses. The underlying obligation to pay medical expenses at all stems from a party's obligation to the medical provider, not from a child support order. If [Santo] is not paying doctors and dentists amounts that are due, that does not constitute contempt of the support order, but rather it pertains to nonpayment of an amount to a third party. The proper remedy would be for those doctors and/or dentists to pursue payment via their own legal remedies, not for [Santo] to be held in contempt of an order that addresses how she and [Batterman] split payment of medical expenses for their children.

The only way the support order could be implicated would be to protect [Batterman] from financial liability for unpaid medical bills [Santo] was responsible for under the support order. Even if, as [Batterman] alleges, [Santo] is not paying her share of medical bills, that would be an obligation [Santo] has to the medical providers, not to [Batterman].

Ultimately, no portion of the child support directed [Santo] to do the things that [Batterman] claims she was obligated to do, so there was no basis for a finding of contempt against [Santo]. Thus, the [trial c]ourt appropriately denied [Batterman's] petition for contempt of the support orders and no relief is due.

Trial Court Opinion, 4/15/2024, at 13-15.

We conclude that the trial court did not abuse its discretion in finding

Santo was not in contempt of the child support order. As noted by the trial

court, Santo's actions do not violate the terms of the February 20, 2020 order. The order in question directed Batterman to make child support payments and provided how the parties would pay for the children's healthcare benefits. The fact that Santo opened bank accounts for the children and applied for the CHIP program on behalf of the children does not establish a violation of the February 20, 2020 order. Indeed, Batterman admits that there is no language in the support order indicating that Santo could not enroll the children into CHIP or open bank accounts for the children. *See* N.T., 1/11/2024, at 7, 15-16. Finally, Batterman does not establish Santo's failure to file a response to his contempt petition evidences her contempt as he failed to show that Santo's action was volitional or that she acted with wrongful intent. *See Habjan*, 73 A.3d at 637. Therefore, we conclude that the trial court did not abuse its discretion in denying Batterman's contempt petitions.

## Failure to Enforce Support Order

Batterman next argues that the trial court "erred as a matter of law by failing to enforce the [s]upport [o]rders." Batterman's Brief at 22. Batterman fails to provide any argument in support other than stating "[s]ee error 1." *Id.* Batterman's incorporation by reference to other portions of his brief is insufficient to allow this Court to review the separate claim raised. *See* Pa.R.A.P. 2119(a) (stating argument must contain analysis and citation to pertinent analysis); *Franciscus v. Sevdik*, 135 A.3d 1092, 1097 (Pa. Super. 2016) (noting courts do not permit parties to incorporate by reference

arguments "as a substitute for the proper presentation of arguments in the body of the appellate brief") (citation omitted). Therefore, Batterman waived this claim for appellate review. **See Moranko v. Downs Racing LP**, 118 A.3d 1111, 1117 n.3 (Pa. Super. 2015) (en banc) ("It [is] well settled that a failure to argue and to cite any authority supporting any argument constitutes a waiver of issues on appeal.").

## **Trial Court as Advocate**

Batterman contends that the trial court judge did not act as a neutral arbiter during the hearing, instead acting as an advocate for Santo. Batterman's Brief at 22-24. Batterman asserts that the judge actively (and improperly) questioned him despite the fact Santo had counsel at the hearing. **Id.** at 23-24.

Our review of the record reveals, and the trial court's opinion confirms, that Batterman did not raise this claim before the trial court. **See** Trial Court Opinion, 4/15/2024, at 16-17.[4] Therefore, the claim is waived on appeal. **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

_____

[4] The trial court also rejects Batterman's claim on the merits pursuant to Pennsylvania Rule of Evidence 614(b). Trial Court Opinion, 4/15/2024, at 18; **see** Pa.R.E. 614(b) ("the court may examine a witness regardless of who calls the witness"). The trial court states that it asked "clarifying questions during testimony, questioning both parties." Trial Court Opinion, 4/15/2024, at 18. It thus concluded that asking "brief, unbiased questions of both parties" was not unreasonable and did not constitute an abuse of discretion. **Id.**

## **Recusal**

Batterman further argues that the trial court judge erred as a matter of law in refusing to hear his emergency motion for recusal and disqualification of the judge. Batterman's Brief at 24-25. Batterman contends that the judge showed clear bias against him, noting that the judge has repeatedly found him to be in contempt, but refused to find Santo in contempt for the same or similar behavior. *Id.* at 24. Batterman further asserts that the trial court erroneously found this request to be waived, highlighting that he has repeatedly sought this judge's recusal. *Id.* at 21-22, 24. Batterman claims that the trial court should have held a hearing on his recusal motions to afford him his due process right to present evidence and witnesses in support of recusal. *Id.* at 21-22.[5]

As a preliminary matter, as the trial court correctly observes, Batterman filed the recusal motion the day before the hearing and failed to raise any question as to the judge's recusal during the hearing. *See* Trial Court Opinion, 4/15/2024, at 18-19, 21-22. It is well settled that "a party must seek recusal of a jurist at the earliest possible moment, i.e., when the party knows of the facts that form the basis for a motion to recuse. If the party fails to present

_____

[5] In a separate argument, Batterman further alleges that the trial court judge erred by "failing to recuse himself from the January 11, 2024 hearing and the case." Batterman's Brief at 25. As he did previously, he baldly directs this Court to "[s]ee error 1," and presents no argument in support of this claim. *Id.* Batterman therefore likewise waived this claim *See* Pa.R.A.P. 2119(a); *Franciscus*, 135 A.3d at 1097.

a motion to recuse at that time, then the party's recusal issue is time-barred and waived." ***Lomas v. Kravitz***, 170 A.3d 380, 390 (Pa. 2017).

Here, Batterman has not established that he raised the recusal claim in a timely manner or preserved the claim at the hearing. As the trial court found,

> [f]iling an unserved motion for recusal one day prior to [the] hearing … is certainly not the earliest possible moment [Batterman] could have filed such a motion. If, as [Batterman] alleges, [the trial c]ourt should have recused itself due to a pattern of biased conduct against him, it is difficult to believe that [Batterman] only realized as much the day before the [trial court judge] heard his petition for contempt.

Trial Court Opinion, 4/15/2024, at 21-22. Therefore, we conclude that his claim is waived. ***See Lomas***, 170 A.3d at 390.

Even if not waived, we agree with the trial court that it is without merit. ***See*** Trial Court Opinion, 4/15/2024, at 19. Our standard of review is well settled:

> Our Supreme Court presumes judges of this Commonwealth are honorable, fair and competent, and, when confronted with a recusal demand, have the ability to determine whether they can rule impartially and without prejudice. The party who asserts a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal and the decision by a judge against whom a plea of prejudice is made will not be disturbed except for an abuse of discretion.
>
> As a general rule, a motion for recusal is initially directed to and decided by the jurist whose impartiality is being challenged. In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her

- 11 -

continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary.

*2303 Bainbridge, LLC v. Steel River Bldg. Sys., Inc.*, 239 A.3d 1107, 1118 (Pa. Super. 2020) (citations and quotation marks omitted). We review recusal decisions for an abuse of discretion. *Id.* "When a judge believes his impartiality can be reasonably questioned, he should recuse himself, just as he should if he himself has doubt as to his ability to preside impartially." *Id.*

The trial court addressed the claim as follows:

The [trial judge] has been the consolidated case management judge of most of the parties' cases in Philadelphia Family Court for over six years, and of the parties' support case for over a year. The reason for having one judge assigned to [t]his high-conflict, highly litigious family was to streamline this litigation by avoiding repeated re-litigation of the same issues being raised repeatedly. [Batterman] filed a recusal motion the day before the hearing, and did not serve a copy on [Santo]. His petition … contained many factually and legally false and inflammatory allegations, and none of them rose to the level of "deep-seated favoritism or antagonism."

Trial Court Opinion, 4/15/2024, at 20.

Batterman has not cited any circumstances that reasonably establish the judge's bias or prejudice. Instead, his sole arguments in support of recusal are based upon the rulings the trial judge has made against him, finding him in contempt, and failing to enter similar adverse rulings against Santo. It is well established that "simply because a judge rules against a [party] does not establish any bias on the part of the judge against that [party]." *Commonwealth v. McCauley,* 199 A.3d 947, 951 (Pa. Super. 2018) (citation

- 12 -

omitted). As Batterman's claims fail to establish an abuse of discretion, we conclude that his recusal motion would be without merit even if properly preserved.

### Santo's Counsel

Next, Batterman argues that the trial judge erred by allowing an assistant district attorney to represent Santo at the January 11, 2024 hearing. Batterman's Brief at 25. Batterman asserts that the assistant district attorney could only represent Santo in her contempt petition against Batterman and could not act in Santo's defense of Batterman's contempt petition. *Id.*

Our review of the record confirms that Batterman failed to raise this claim before the trial court. *See* Pa.R.A.P. 302(a). Furthermore, Batterman does not support his bald claims with any citation to pertinent case law. *See* Pa.R.A.P. 2119(a). Thus, the claim is waived.[6]

### Santo's Contempt Petition

Finally, Batterman argues that the trial court judge erred by hearing Santo's contempt petition, filed on November 30, 2023, before hearing his petition to suspend or modify child support and alimony pendente lite. Batterman's Brief at 26-27. Batterman contends that he filed several petitions to modify or suspend support, which the trial court never heard. *Id.* at 26.

---

[6] The trial court noted that the assistant district attorney objected one time during the proceeding on Batterman's contempt petition, and that it overruled the objection. Trial Court Opinion, 4/15/2024, at 23.

Batterman states he filed a petition to schedule hearings on his outstanding petitions, including those related to modification and/or suspension of support, in July 2023, but the trial court failed to schedule a hearing on the petition before the January 11, 2024 contempt hearing. *Id.* at 26-27. Batterman claims he was prejudiced by the trial court's failure. *Id.* at 26.

Batterman failed to raise this claim before the trial court. *See* Pa.R.A.P. 302(a). Additionally, Batterman does not cite to any case law or statutory language that requires the scheduling of a hearing on support matters prior to hearing petitions sounding in contempt. *See* Pa.R.A.P. 2119(a). Finally, as the trial court observes, Batterman withdrew his support modification petition and refiled it in Montgomery County. *See* Trial Court Opinion, 4/15/2024, at 23. Accordingly, Batterman has waived this claim.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/15/2025